UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

MICHAEL VAUGHAN                                                                     PLAINTIFF

v.                                        NO. 3:23-CV-P100-CRS

COOKIE CREWS, *et al*                                                  DEFENDANTS

**MEMORANDUM OPINION**

This case is a *pro se* civil rights action brought by Michael Vaughan, an inmate at the Kentucky State Reformatory ("KSR"). Vaughan filed a verified complaint on March 1, 2023 (DN 01) and a verified "Amended-Supplemental Complaint" (DN 10) on March 20, 2023. This matter is now before the Court for initial screening pursuant to the Prison Litigation Reform Act (the "PLRA"). 28 U.S.C. §§ 1915(e)(2)(B), 1915A and 42 U.S.C. § 1997(e). For the reasons set forth below, this action will be dismissed in part and allowed to proceed in part.

**I. SUMMARY OF CLAIMS**

Vaughan brought this action against the Kentucky Department of Corrections (the "KDOC"), against Wellpath LLC ("Wellpath"),[1] against six KDOC employees and against two Wellpath employees. Vaughan also names "John/Jane Roe's" [sic]. These defendants are unknown KDOC and Wellpath employees. Vaughan has sued the individual defendants in their official and individual capacities. He seeks monetary, declaratory, and injunctive relief.

Vaughan alleges two theories of liability under § 1983 (1) an Eighth Amendment failure-to-protect theory and (2) a First Amendment retaliation theory. Vaughan identifies only one KDOC official whom he charges with retaliation: Hillary Rutger. Vaughan alleges that other KDOC employees retaliated against him but does not identify those employees by name or include them

---

[1] In the caption of the Complaint, Vaughan names Wellpath Corporation d/b/a Wellpath, LLC but the allegations are against only Wellpath, LLC. Accordingly, the Court construes the Complaint as being brought against Wellpath, LLC.

among the Jane and John Roe defendants. Vaughan alleges that Rutger and all of the remaining named and unnamed defendants violated his Eighth Amendment right to be free from either the specific risk of harm posed by two inmates (James Belisle and/or Shawn Garrett) or a general risk of harm posed to the general population by non-segregated, violent inmates. Vaughan has also brought state law claims for negligence and gross negligence against all the defendants.

### A. Eighth Amendment Failure-to-Protect Claims

Vaughan premises his Eighth Amendment claims on the allegation that violent inmates who should be segregated from the general population are not segregated because they are not properly classified. Vaughan alleges that these inmates should be classified as maximum-custody inmates because they have multiple institutional convictions for violent behavior and/or because they are "severely mentally ill" which causes them to be violent. Vaughan alleges that these classification errors cause the ultimate failure to segregate such inmates, resulting in two assaults on Vaughan and an on-going, known risk of harm to all inmates at the KSR.

Vaughan also pleads that inmates who are too dangerous to be in the general population remain there because of a new and too lenient Inmate Classification Manual. Vaughan alleges that the new guidelines result in classifying inmates as medium-custody when they should be (and would be under the prior manual) classified as maximum-custody inmates. Vaughan pleads that the new manual results in a general risk of harm to all inmates at the KSR and the specific risk of harm posed to Vaughan by inmate James Belisle. Vaughan blames defendant Commissioner Cookie Crews for these harms by alleging that she may have unilaterally, and thus unlawfully, promulgated the new manual.

The allegations relating to the alleged harms described above are set out below.

### 1. The First Assault on Vaughn – Inmate James Belisle

Vaughan alleges that inmate James Belisle "is a (1) severely mentally ill inmate; with a (2) long history of violence towards other inmates, KDOC officials, and towards himself."[2] Vaughan pleads that defendant Kimberly Thompson assigned Belisle to Vaughan's cell, "violat[ing] the obvious threat that the severely mentally ill, and well known to be violent James Belisle represented to [Vaughan's] and all inmates [sic] safety."[3] Vaughan pleads that he was "assaulted and battered within hours" of Belisle's assignment, alleging that Belisle attacked him while Vaughan was sleeping.[4] Vaughan avers that he "had his teeth & crowns knocked out, and his face and mouth lacerated" by his own teeth, including "having his bottom lip completely punctured through by [his] bottom teeth."[5] Vaughan alleges that this assault by Belisle took place on May 27, 2022.[6] Vaughan also alleges that defendant Warden Anna Valentine "chose to permit an extremely violent severely mentally inmate to be placed in General Population, and subsequently into [Vaughan's] cell . . . ."[7]

Additionally, Vaughan pleads that he appealed, twice, to Warden Valentine from the rejection of his grievance about Belisle's attack – a grievance from which Vaughan quotes extensively to describe Belisle's alleged history of violence; the alleged failure to restrict Belisle to a single-occupant cell; and a later, alleged release of Belisle into the prison yard, assignment to a double cell, and subsequent assaults on a guard and another inmate. Vaughan alleges that Valentine denied his appeals.[8]  Similarly, Vaughan alleges that Crews failed to protect him by

---

[2] Complaint, DN 01, at PageID# 28, ¶ 33.
[3] *Id.* at PageID# 34, ¶ 59. Vaughan has quoted directly from his grievances in several instances which comprise portions of his allegations.  This quotation is from one of those instances.
[4] *Id.* PageID# 02, at ¶ 3.
[5] *Id.*
[6] *Id.* at PageID# 31, ¶¶ 44-45.
[7] *Id.* at PageID# 06, ¶ 16.
[8] *Id.* at PageID# 32-33, ¶ 53 and PageID# 34, ¶¶ 59-60.

3

failing to ensure that her subordinates were properly classifying and segregating inmates.[9] Finally, Vaughan alleges that unknown Wellpath and KDOC employees failed to reclassify Belisle before Belisle was released into Vaughan's cell and that unknown KDOC employees took part in assigning Belisle to Vaughan's cell in violation of his Eighth Amendment right to be segregated from violent inmates.

### 2. The Second Assault on Vaughan – Inmate Shawn Garrett

Vaughan alleges that on February 26, 2023, inmate Shawn Garrett attacked Vaughan in the KSR dining facility. According to Vaughan, "[t]his is an inmate who should be classified Maximum due to [numerous] DRs for assaulting inmates and for having shanks and other contraband. Yet he was in the general population."[10] There are no allegations that any of the defendants knew that Garrett specifically posed a risk of harm to Vaughan before the alleged assault by Garrett. Rather, Vaughan pleads that Garrett took out a prison hit on Vaughan: "On <u>Feb 26 2023</u> & <u>Feb 27 2023</u>, Plaintiff was advised by inmates that a copy of documents that I was filing with the Court had been made public on the prison yard. This is why a 'hit' was put out on me and I was attacked."[11] Vaughan also alleges that "Garrett is a known Gang 'hitman' at KSR. He represents a threat ongoing threat [sic] to Plaintiff Vaughan."[12]

### 3. Overall Failure to Segregate

Vaughan pleads that Warden Valentine and defendant Commissioner Cookie Crews knew that violent inmates were not being segregated and that this failure subjects all inmates to an on-going risk of harm. Vaughan alleges that he filed a grievance against defendant Commissioner Cookie Crews, describing incidents of violence (including Belisle's assault) and alleging that she

---

[9] *Id.* at PageID# 05, ¶ 15.
[10] *Id.* at PageID# 49, ¶ 113.
[11] *Id.* at ¶ 114 (underlining in original).
[12] Amended-Supplemental Complaint, DN 02, at PageID# 08, ¶ 27.

failed to ensure that violent inmates are segregated from the general population by failing to enforce prison regulations.[13] Vaughan pleads that he sent a letter about the denial of the grievance to Warden Valentine and to Commissioner Crews which grievance described the risk to inmates in the general population posed by unsegregated, violent inmates: "On <u>July 20th 2022</u>, Plaintiff sent his Grievance Ruled Non-Grievable Appeal" [sic] letter to Defendants Cookie Crews & Anna Valentine . . . . In this letter, Plaintiff stated: . . . *Please find attached, with Exhibit A, a true & correct copy of the KSR Grievance that I filed . . . .*"[14]

### 4. The New Inmate Classification Manual

Vaughan alleges that Crews altered the inmate classification rules, promulgating them in a new "Inmate Classification Manual". Vaughan pleads that Crews' new manual subjects inmates to greater risk of harm because it permits violent inmates to remain unsegregated, illustrating his allegation with a description of inmate James Armour's being classified "medium custody" when he should be and would be "maximum custody" under the former rules.[15] Vaughan avers that Crews is liable for this harm because she promulgated the new manual without seeking and obtaining approval for it from the Kentucky Legislative Research Commission (the "KRC").[16] At the same time, however, Vaughan also avers that " . . . it is unknown as to IF this was an authorized amendment . . . ."[17] Vaughan alleges that his investigation is on-going.[18]

---

[13] Complaint, DN 01, at PageID# 37-38, ¶ 66; *see also id.* at ¶ 70 ("*In my grievance, I specifically identified that the 'Statement of the Problem" was 'Cookie Crews' failure to enforce KDOC policies, Procedures, and Admin Regulations [that] has resulted in life & safety threats to me at KDOC institutions*.") (italics in original).
[14] *Id.* at PageID# 39, ¶ 70 (underlining and italics in original).
[15] *Id.* at PageID# 43-44, ¶¶ 80-81, 83-84.
[16] Complaint, DN 01, at PageID# 25, ¶ 35(a)(2) and PageID# 51,¶ 124(b)(ii), respectively.
[17] *Id.* at PageID# 25, ¶ 35 (emphasis in original).
[18] *Id.* at n.9.

### 5. Mental Health Classifications

Vaughan alleges that Wellpath is responsible for correctly classifying inmates according to "mental health checks," which are sets of signs, diagnoses and exhibited behaviors that result in classifications ranging from MH-0 to MH-4.[19] Vaughan does not identify the source of the alleged mental health classification descriptions, aside from alleging that "MH" is an abbreviation used by Wellpath.

Vaughan alleges that he was attacked "TWICE by inmates who failed to be reclassified both behaviorally and mentally by the KDOC and WellPath Defendants."[20] As set out above, the two inmates who allegedly assaulted Vaughan are James Belisle and Shawn Garrett. Vaughan does not allege that Garrett suffers from mental illness. In contrast, Vaughan alleges that inmate Belisle's mental health status conforms with the indicators for an MH-4, "Severe Impairment," classification. Vaughan does so without any description of behaviors by Belisle or any other facts in support of Vaughan's conclusion that Belisle meets an MH-4 classification. Vaughan simply quotes the symptoms and says Belisle has them.[21] Vaughan does not plead what Belisle's mental health classification is, just what Vaughan suspects it should be.

Vaughan also alleges that "WellPath & KDOC Officials failed to properly classify Inmate Armour."[22] And, in a like manner, Vaughan ascribes the indicators for an MH-4 Classification to Armour.[23] Vaughan, in quoting his grievances, identifies other mentally ill inmates but does not allege that any were given an erroneous mental-health classification.

---

[19] *Id.* at PageID# 21-24, ¶ 31(b)(i)-(v).
[20] *Id.* at PageID# 53, ¶ 125.
[21] *Id.* at PageID# 28, ¶¶ 42-44.
[22] *Id.* at PageID# 44, ¶ 82.
[23] *Id.* at ¶ 83.

### B. Retaliation Claim

Vaughan pleads that defendant Hillary Rutger is the "Unit Administrator," the "Law Library Administrator" and the "Grievance Coordinator" at the KSR.[24] Vaughan's alleges that Rutger retaliated against him in response to Vaughan's submission of a "confidential" grievance and his filing of the complaint that initiated the instant lawsuit. Vaughan alleges that Rutger released "a 'confidential grievance' and a '<u>Final Draft</u>' copy of the Complaint to the Prison Yard, which has resulted in Plaintiff Vaughan being attacked and multiple 'Prison Hits being issued directed [sic] at him."[25] Vaughan alleges that publishing this confidential grievance would "obviously" cause inmates to "become hostile toward" him because he identified violent inmates and alleged that they should be segregated and on "lock down."[26] Vaughan also alleges that Rutger made Vaughan's filings public by loudly discussing them over the phone in a place where inmates could overhear her.[27] Vaughan further pleads that as a result of Rutger's conduct, inmate Garrett's assault on Vaughan was a prison hit, a fact which Vaughan alleges to have learned from inmate "Dozier" and three other unidentified inmates.[28] As noted above, Vaughan also alleges that Garrett now poses an on-going risk of harm to Vaughan.[29]

Vaughan also alleges that Rutger retaliated against him by filing an unfounded disciplinary report which subjects him to the loss of good time and disqualifies him for mandatory release supervision.[30] Vaughan additionally pleads that unnamed KDOC officials retaliated against him because he lost his prison job and "has been refused jobs by the defendants" in retaliation for Vaughan's filing the confidential grievance, sending letters, and filing the complaint in this

---

[24] Amended-Supplement Complaint, DN 02, at PageID# 02, ¶ 3.
[25] *Id.*
[26] *Id.* at PageID# 7, ¶ 25.
[27] *Id.* at PageID# 10, ¶ 34.
[28] *Id.* at PageID# 8, ¶¶ 26-27.
[29] *Id.* at the second ¶ 27.
[30] *Id.* at PageID# 14, ¶ 42.

matter.[31] Vaughan alleges that he suspects that KDOC officials will transfer him to a facility where he cannot receive kosher meals and that they will destroy evidence.[32]

### C. State Law Negligence Claims

Vaughan alleges that the defendants had a duty to exercise ordinary care for his safety but instead exposed him to a substantial risk of harm that resulted in actual harm to him:

> Defendants and the '*Real Party in Interest*', the Ky. Dept. of Corrections, were required to exercise ordinary care to Plaintiff. Instead, Vaughan was exposed to a *substantial risk of serious harm* and was subsequently actually injured, suffering from *serious harm*, due to gross negligence of the Defendants.[33]

## II. STANDARD OF REVIEW

The PLRA requires the Court to conduct an initial review of any civil complaint which is filed *in forma pauperis*, is brought by a prisoner-plaintiff against government entities or officials, or which challenges a prisoner-plaintiff's conditions of confinement. 28 U.S.C. § 1915(e)(2), § 1915A and 42 U.S.C. § 1997e(c), respectively. The court must dismiss the complaint, or any part of it, if the court finds that the complaint is frivolous or malicious, seeks monetary relief from a defendant who is immune from such relief, or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915A; 42 U.S.C. 1997e(c). A claim is frivolous when it lacks an arguable basis either in fact or law. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Thus, if a claim is based on a meritless legal theory or if the factual contentions are baseless, the court may dismiss the claim. *Id.* at 327.

To survive dismissal for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

---

[31] *Id.* at PageID# 13, ¶ 42.
[32] *Id.* at PageID# 16-17.
[33] Complaint, DN 01, at PageID# 55, ¶ 134. Vaughan makes nearly identical allegations in ¶ 142, omitting the word gross, so as to allege ordinary negligence.

plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).[34] If any of the claims for relief are implausible on their face, the court must dismiss them. *Iqbal,* 556 U.S. at 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly¸* 550 U.S. at 556). In conducting its plausibility review, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M &G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted).

Further, a *pro se* pleading must be liberally construed and "held to less stringent standards than" pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nevertheless, a "pro se complainant can plead himself [or herself] out of court by pleading facts that undermine the allegations set forth in [the] complaint." *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999). Moreover, "the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett v,* 561 F.3d at 488 (citating omitted). And the court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall,* 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.,* 518 F.2d 1167, 1169 (6th Cir. 1975). To mandate otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the

---

[34] The dismissal standard pronounced by the United States Supreme Court in *Iqbal*, 556 U.S. 662 and *Twombly*, 550 U.S. 544 "governs dismissals for failure to state a claim under the PLRA." *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010).

strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

## III. ANALYSIS

### A. General § 1983 Standards

Claims under 42 U.S.C. § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *accord Flint ex rel Flint v. Ky. Dep't of Corrections*, 270 F.3d 340, 351 (6th Cir. 2001). "To state a claim under § 1983, a plaintiff must allege [1] the violation of a right secured by the Constitution and laws of the United States, and [2] must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### B. Vaughan's Eighth Amendment Failure-to-Protect Claim

#### 1. The KDOC

Vaughan's § 1983 claims cannot proceed against the KDOC because the KDOC is immune from suit. The KDOC has immunity for two reasons. First, the KDOC is not a "person" for purposes of § 1983, and second, the Eleventh Amendment bars a suit against the KDOC. The KDOC is an arm of the state. As a result, a § 1983 suit against the KDOC is the same as suing the Commonwealth, or state, of Kentucky. States are not persons who can be sued pursuant to § 1983. *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978). Further, it is well-settled that "Eleventh Amendment immunity bars all suits, whether for injunctive, declaratory or monetary relief against the state and its departments . . . ." *McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012); *Daleure v. Commonwealth of Ky.*, 119 F. Supp.2d 683, 687 (W.D. Ky. 2000) (Eleventh Amendment protects Kentucky Department of Corrections from suit).

### 2. The Individual KDOC Defendants

To plead a failure-to-protect claim against KDOC staff, Vaughan must allege facts showing that each of them was deliberately indifferent "to a substantial risk of serious harm" from violent inmates. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). To plead "deliberate indifference," a complaint must contain allegations "'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Green v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (quoting *Farmer*, 511 U.S. at 829, 847). Accordingly, Vaughan must plead facts which permit an inference that each individual KDOC defendant was either (1) aware of a substantial risk to Vaughan or (2) aware that violent inmates were not properly segregated and posed a substantial risk to a class of inmates. *Id.* (citing *Curry v. Scott*, 249 F.3d 493, 507-08 (6th Cir. 2011)); *Farmer*, 511 U.S. at 843 (immaterial whether an inmate "faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk").

Liberally construing the Complaint and at this initial screening phrase, the Court finds that Vaughan has sufficiently pleaded claims against Kimberly Thompson, Anna Valentine and Cookie Crews based upon the alleged specific risk of harm to Vaughan posed by Belisle. The Court also finds that Vaughan has sufficiently pleaded a claim against defendants Valentine and Crews for the alleged post-assault and on-going risk of harm to Vaughan posed by inmate Shawn Garrett. Vaughan's allegations that Valentine and Crews were generally aware that violent inmates were not properly segregated and posed a substantial risk to the general population may also proceed. By allowing these claims to proceed, the Court passes no judgment on the merits or the ultimate outcome of this action.

At the same time, other defendants and certain bases for Vaughan's Eighth Amendment claims will be dismissed. First, to the extent that Vaughan's Eighth Amendment claims are based

11

on a failure to follow or to enforce state laws or state regulations, those claims cannot proceed. Such claims are not cognizable under § 1983. *Smith v. City of Salem, Ohio*, 378 F.3d 566, 578 (6th Cir. 2004) (violation of state law cannot be basis for violation of federal constitutional right). As a result, to the extent Vaughan alleges defendants Thompson, Valentine, Rutger and Crews violated Vaughan's Eighth Amendment rights by failing to follow or enforce state law or state regulations, those claims will be dismissed. Defendants Jesse Stack and Philip Campbell will be dismissed from this action for the same reason. Vaughan alleges that Stack "refuses to enforce the enforce [sic] KY Admin regulations which harmed Plaintiff."[35] Vaughan makes the same allegation against Deputy Warden Campbell.[36] These are the only allegations relating to conduct that allegedly resulted in harm, and they do not state a claim against either Stack or Campbell. *Smith*, 378 F.3d at 578.

Next, to the extent that Vaughan's failure-to-protect claim against Crews is based on unauthorized changes to the "Inmate Classification Manual", his claims will be dismissed for a second reason. Vaughan cannot state a plausible claim on based on an unauthorized manual because he has pleaded that this fundamental allegation may not be true: ". . . it is unknown as to IF this was an authorized amendment . . . ."[37] That is, Vaughan's factual content does not allow the Court to draw "the reasonable inference that [Crews] is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (2009) (citing *Twombly*, 550 U.S. at 570). As a result, the claim is implausible. *Id.*

Next, Vaughan alleges that Crews failed to protect him by failing to ensure that her subordinates were properly classifying and segregating inmates.[38] Vaughan makes like allegations against Valentine, stating that she is responsible for "ensuring that inmates were properly classified

---

[35] Complaint, DN 01, at PageID# 07, ¶ 17.
[36] *Id.* at ¶ 18.
[37] *Id.* at PageID# 25, ¶ 35.
[38] *Id.* at PageID# 05, ¶ 15.

12

& segregated"[39] but failed "to ensure that inmates are segregated by custody classification."[40] These averments allege respondeat-superior liability. Such claims are not viable § 1983 claims unless it is shown "that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

### 3. Wellpath LLC

For purposes of § 1983, despite being a private company, and based on Vaughan's allegations, Wellpath is a state actor amenable to suit. A private company acts under color of state law if the company performs traditional state functions pursuant to a contract with a state. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Providing healthcare to inmates is a traditional state function. *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993). Vaughan alleges that "Wellpath is a healthcare provider corporation contract entity for the KY Dep't of Corrections."[41] This allegation suffices to deem Wellpath a state actor upon initial screening.

With respect to liability under § 1983, private-company, state actors are subject to the same standards that are applied to the conduct of municipalities. *Street*, 102 F.3d at 818. Municipalities can be held liable only for their own wrongdoing. *Monell*, 436 U.S. at 691. As a result, liability will attach to a municipality only where the plaintiff establishes that a municipality's policy or custom caused the alleged violation of a constitutional right. "Policy" means "a policy statement, ordinance, regulation, or decision officially adopted and promulgated . . . ." *Id.* at 690. By contrast, an "actionable custom" lacks "'formal approval through . . . official decision making channels.'" *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007) (quoting *Monell*, 436 U.S. at 690-91).

---

[39] Complaint, DN 01, at PageID# 06, ¶16.
[40] *Id.* at PageID# 52, ¶ 124 (b)(iii).
[41] *Id.* at PageID# 10, ¶ 22.

13

A plaintiff may establish the existence of a custom by showing that one or more policymaking officials knew about and acquiesced in the practice at issue. *Doe v. Clariborne Cnty.*, 103 F.3d 495, 508 (6th Cir. 1996). Such an "inaction theory," requires the plaintiff to prove (1) a clear and persistent pattern of violating federal rights; (2) one or more policymakers' being on notice or constructive notice of the violations; (3) tacit approval of the unlawful conduct by the policymaker(s); and (4) the custom of inaction was the "moving force" behind (*i.e.* the direct cause of) the constitutional violation. *Id.* With respect to the elements of knowledge and failing to act, the plaintiff must show "that the need to act is so obvious that the [defendant's] conscious decision not to act can be said to amount of a 'policy' of indifference to [the plaintiff's] constitutional rights." *Id.* (citing *City of Canton v. Harris,* 489 U.S. 378, 389 (1989)).

Here, Vaughan has alleged elements for a municipal liability claim but has not alleged sufficient facts in support of those allegations. There are no allegations as to any number or nature of reported mental-health misclassifications or failures to reclassify that can fairly be said to constitute "a clear and persistent pattern of misconduct" about which Wellpath's policymakers knew. *Id.; see also Monell*, 436 U.S. at 691 (plaintiff must show "a custom so permanent and well settled as to constitute a custom or usage with the force of law."). Vaughan does not identify or describe mental-health misclassifications of any inmates other than Belisle and Armour.

Additionally, there are no factual allegations as to how either of the two Wellpath defendants with decision-making authority (Denise A. Burkett and Dawn Patterson) knew about and then acquiesced in either Belisle's, Armour's or any other mental-health misclassifications. Vaughan does not allege that either Burkett or Patterson knew about Belisle's alleged assault on Vaughan or about assaults by either Belisle or Armour on other inmates. Instead, Vaughan's Complaint contains only the conclusory allegation that Burkett and Patterson each "had actual or

14

constructive knowledge" of "a pattern of not properly conducting mental health classification & reclassification".[42] Such unadorned conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 768. For the same reason, Vaughan's similar conclusory allegation that Wellpath is understaffed, resulting in an inability "to ensure inmates receive proper mental health classifications/reclassifications" fails to state a claim.[43]

### 4. Wellpath defendants Burkett and Patterson

Vaughan has also sued Denise A. Burkett and Dawn Patterson. Vaughan alleges that Burkett "is the Acting Clinical Director for Defendant **Wellpath LLC**," and that Patterson is the "Manager for **Wellpath LLC**."[44] Vaughan has sued Burkett and Patterson in their individual and official capacities and based on their positions as supervisors. None of his claims against these defendants survive initial scrutiny. The official capacity claims are superfluous because Vaughan also sued Wellpath and Vaughan's allegations otherwise fail to state a claim upon which relief can be granted.

#### a. Official Capacity Claims

Suits against municipal employees in their official capacities "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Ky. v. Graham*, 473 U.S. 159, 165 (1985) (citation omitted). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166. As a result, official-capacity claims against government officials are redundant. *Faith Baptist Church v. Waterford Twp.,* 522 F. App'x. 322, 327 (6th Cir. 2013) ("Having sued . . . the entity for which [plaintiff] was an agent, the suit against

---

[42] *Id.* at PageID# 09, § 20 & 21.
[43] *Id.* at PageID# 47, ¶100.
[44] *Id.* (emphasis in original).

15

[defendant] in his official capacity was superfluous."). Thus, "[i]n the Eastern and Western Districts of Kentucky . . . the judges have adopted the practical approach of dismissing the official capacity claims." *Baar v. Jefferson Cnty. Bd. of Educ.*, 686 F. Supp.2d 699, 704 (W.D. Ky. 2010); *Thorpe v. Breathitt Cnty. Bd. of Educ.*, 932 F. Supp.2d 799, 802 (E.D. Ky. 2013) (where § 1983 complaint asserts claim against municipality and official-capacity claim against municipal official, federal courts dismiss official capacity claim). Vaughan has sued both the entity (Wellpath) and its officials (Burkett and Patterson) in their official capacities. The Court will dismiss the official-capacity claims because they are redundant. *Id.*

### b. Individual Capacity Claims

As noted above, to plausibly state a § 1983 claim against a government official, a plaintiff must plead that the government official, "through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. "There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy*, 729 F.2d at 421. Vaughan's allegations against Burkett and Patterson fall short of this standard for the same reasons that they fall short of stating a claim against Wellpath. There are no allegations that either of these defendants directly participated in the alleged misclassifications or allegations which allow the Court to draw a reasonable inference that either of them knowingly acquiesced in a custom of misclassifying or failing to reclassify inmates based on mental health status.[45] Instead, Vaughan relies solely on Burkett's and Patterson's right to control and supervise Wellpath

---

[45] Vaughan's allegations quote from a grievance he filed describing assaults by inmate Markus Doyle whom Vaughan alleges is "mentally ill" but Vaughan attributes that harm to Crews' failure to supervise. *Id.* at PageID# 38, ¶ 66.

employees for his claims against these two supervisors. That is not enough. Liability must be based on more than the right to control employees. *Hays v. Jefferson Cnty.*, 668 F.2d 869 (6th Cir. 1982).

Vaughan also alleges that Burkett and Patterson knew that other Wellpath employees took needed psychotropic medicine away from Belisle and others[46] but does not allege facts in support of these conclusory allegations. For example, Vaughan alleges that Belisle and Armour needed psychotropic medication but does not allege it was taken away from either of them. Nor does Vaughan identify any other inmate whose prescribed psychotropic medication was taken away, how it was taken away or by whom. Although "'detailed factual allegations'" are not required, a complaint must contain "more than an unadorned, the defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 768 (quoting *Twombly*, 550 U.S. at 555).

### 5. Unknown "John/Jane Roes"

Vaughan alleges that unknown Wellpath and KDOC employees failed to reclassify Belisle before Belisle was released into Vaughan's cell and that unknown KDOC employees took part in assigning Belisle to Vaughan's cell in violation of his Eighth Amendment right to be segregated from violent inmates. Upon initial screening, the Court will allow these claims to go forward. Again, by allowing these claims to proceed, the Court passes no judgment on the merits or the ultimate outcome of this action.

### C. Vaughan's First Amendment Retaliation Claim

To establish a retaliation claim in violation of his First Amendment rights, Vaughan "must prove that (1) he engaged in protected conduct, (2) the defendant took an adverse action that is capable of deterring a person of 'ordinary firmness from continuing to engage in that conduct,' and (3) 'the adverse action was motivated at least in part by [Vaughan's] protected conduct.'" *Hill*,

---

[46] *Id.* at PageID# 08-09, ¶¶ 20 & 21.

630 F.3d at 472 (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394, 398 (6th Cir. 1999) (en banc)). Upon initial review of the Complaint, the Court will allow Vaughan's retaliation claims against defendant Rutger to proceed – except to the extent that he grounds his claim against her on the loss of his prison job, the inability to secure other prison employment, the loss of good time, or being disqualified from eligibility for mandatory release. To the extent Vaughan has asserted his retaliation claim against Rutger on these grounds, it will be dismissed for the reasons explained below. Similarly, the Court will dismiss Vaughan's retaliation claims against unknown KDOC officials.

Other than Rutger, Vaughan has not identified any personnel who allegedly retaliated against him in response to his grievance, letters, or his complaint in this action. While he alleges generally that he lost his prison job and has been refused prison employment, he does not connect anyone other than Rutger to these losses. Vaughan does not include such defendants in his description of the Jane & John Doe defendants. Accordingly, his retaliation claims based on the unidentified KDOC officials fail to state a claim upon which relief can be granted and the Court will dismiss them. *See, e.g., Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) ("Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints.").

Even if Vaughan had identified the KDOC officials who deprived him of prison employment, he has failed to state a claim. There is no constitutional right to a prison job. *Newsome v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989). Accordingly, Vaughan's loss of his prison job and the alleged refusals to provide him with another job do not provide actionable grounds for his retaliation claim. The same is true for Vaughan's alleged loss of good time and eligibility for

mandatory release. Vaughan does not have a constitutional right to good time credit. *Hansard v. Barrett,* 980 F.2d 1059, 1062 (6th Cir. 1992) ("The United States Supreme Court has held that inmates have no inherent constitutional right to good time credit.") (citing *Wolff v. McDonnell,* 418 U.S. 539, 557 (1974)).

### D. State Law Negligence Claims

Upon initial review, the Court will allow Vaughan's state law claims for negligence and gross negligence to proceed against Crews, Valentine, Thompson, Burkett, Patterson, Rutger, and the unknown defendants to the extent they are sued in their individual capacities. The Court will also allow Vaughan's negligence claims against Wellpath, LLC to proceed at this juncture.

Vaughn does not plead facts that connect defendants Stack and Philips to any negligent conduct with respect to segregating violent inmates generally or to protecting Vaughan from either Belisle or Garrett. Those claims will be dismissed as too conclusory to state a claim.

The Court will also dismiss Vaughan's negligence claims against the KDOC and against the individual defendants in their official capacities because the Eleventh Amendment bars those claims:

> The Supreme Court has squarely held that pendent state law claims against state officials in their official capacity are barred by the Eleventh Amendment. . . . The federal courts are simply not open to such state law challenges to official state action, absent explicit state waiver of the federal court immunity found in the Eleventh Amendment.

*Experimental Holdings, Inc. v. Farris,* 503 F.3d 514, 520–21 (6th Cir. 2007) (citing *Pennhurst State Sch. v. Halderman,* 465 U.S. 89, 117–21 (1984)).

19

## IV. CONCLUSION

For the reasons set forth above, separate orders will be entered this date in accordance with this opinion.

September 18, 2023

Charles R. Simpson III, Senior Judge
United States District Court

20